**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHARON J. SHAW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO 05-0059-P-D** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff brings this action under 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Social Security disability insurance benefits and Supplemental Security Income. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Oral argument was held on October 27, 2005. Upon consideration of the administrative record, oral argument and the memoranda of the parties, it is recommended that the decision of the Commissioner be **reversed and remanded.**

I.    **Issues on Appeal**

1. Whether the Administrative Law Judge (ALJ) erred in finding the evidence demonstrated that plaintiff has severe impairments without specifying which impairments he found to be severe.

2. Whether the ALJ committed reversible error by failing to develop a full and fair record because the ALJ failed to resolve any controversy between the Vocational Expert's testimony and the Dictionary of Occupational Titles.

3.  Whether the ALJ presented a complete hypothetical question to the Vocational Expert.

**II.**     **Background Facts**

Plaintiff was born August 18, 1957 and was forty-four years old at the time of the administrative hearing on October 17, 2001. (Tr. 57, 436).  Plaintiff has a tenth grade education and attended special education classes in elementary school. (Tr. 466-468, 480).  Plaintiff has past relevant work as an order puller in a warehouse. (Tr. 490).  Plaintiff alleges that she became unable to work on May 19, 1992, because of a back injury. (Tr. 441-442, 474).

**III.**     **Procedural History**

Plaintiff initially applied for disability insurance benefits on February 13, 1997 (Tr. 94-95) and for supplemental security income with a protective filing date of January 21, 1997. (Tr. 93).  The applications were denied initially and on reconsideration. (Tr. 57-60; 73-74).  Plaintiff did not request a hearing before an ALJ.

Plaintiff next applied for disability insurance benefits and supplemental security income on November 28, 1997. (Tr. 96-98, 116, 337-339, 404).  The applications were denied initially, on reconsideration, (Tr. 61-64, 75-80, 83-85, 332-335, 240-245) and by an ALJ on February 24, 1999 after an administrative hearing. (Tr. 24-33).  Following the Appeals Council's denial of review, plaintiff appealed the ALJ's decision to the United States District Court and on April 19, 2001, the case was remanded to the Appeals Council on motion of the defendant for further administrative action. (Tr. 420-423B).

Prior to the District Court's remand, plaintiff filed another application for supplemental security income on February 22, 2000 which was denied initially. (Tr. 441-450, 459-463).  She

requested a hearing before the ALJ and it was held on October 17, 2001, in combination with the hearing on remand from the District Court. (Tr. 424-440).  Plaintiff, her attorney and a vocational expert (VE) were present.  On November 30, 2001, the ALJ entered a decision wherein he found the plaintiff not disabled. (Tr. 404-414).  On January 13, 2005, the Appeals Council denied the request for review and the hearing decision became the final decision of the Commissioner of Social Security. (Tr. 369-372).

IV.    **Findings of the Administrative Law Judge**

The ALJ found plaintiff has "severe impairments that impose a significant limitation on her ability to perform some basic work activities." (Tr. 413).  The ALJ found that these impairments singly or in combination did not meet or medically equal a listing in the Listing of Impairments. 20 C.F.R.  Pt. 404, Subpt. P, App. 1. (Tr. 413).  After review of the medical evidence and plaintiff's testimony, the ALJ found plaintiff has the residual functional capacity for light exertional work but could not return to her past relevant work which was performed at the medium exertional level. (Tr. 412 ).  Based upon the testimony of the vocational expert, the ALJ found plaintiff could perform other work which exists in significant number in the national economy and was not disabled. (Tr. 412-413).

V.    **Plaintiff's Testimony**

At the hearing on October 17, 2001, plaintiff testified as follows:

Plaintiff has chronic back pain and last worked in 1995. (Tr. 427-428).  She does not receive treatment for any other medical condition.(Tr. 433).  She sees an orthopedic physician twice a year for epidural injections or as needed for her back condition. (Tr. 428).  At the time of her hearing, she had not received an injection since 1999. (Tr. 429).  She has back pain across

3

her back and down her left leg and constant burning. (Tr. 431).  She takes prescribed medication daily which helps but does not eliminate the pain. (Tr. 429, 431).  The medicine causes nausea. (Tr. 429, 434).  To control her pain, she will sit, stand and walk a little bit each day. (Tr. 431).

Shortly before August 2000, plaintiff began to have neck pain which radiates into her arms. (Tr. 429).  Following an MRI, she was diagnosed with a bone spur and her doctor gave the options of twice daily traction exercise or surgery.  She performs the traction exercise twice daily for a week then takes a week off.  The exercise lasts about ten to fifteen minutes. (Tr. 430).  Her left arm is dead and tingles, but she has no difficulty using her right hand. (Tr. 431).

Because of her neck and back pain, her husband performs the household chores and she drives only short distances. (Tr. 432).  She does not lift clothes baskets and has difficulty bending to tie her shoe. (Tr. 433).  She can sit, stand or walk for about thirty minutes each before she experience pain or pressure in her back or heaviness in her leg. (Tr. 432).

**VI**.   **Vocational Expert Testimony**

The VE testified that all of plaintiff's past work was unskilled and performed at the medium exertional level. (Tr. 435).  The ALJ then posed a hypothetical question wherein the hypothetical claimant had a tenth grade education, was forty four years old, and past work experience as identified by plaintiff.  The ALJ asked the VE to assume a "diagnosis of degenerative disc disease with possible small herniated discs with mild radiculopathy." (Tr. 436).

The ALJ added the elements of the ability to sit, stand and walk for one hour at a time; sit for eight hours in an eight hour day, stand for six hours in an eight hour day and walk for four hours in an eight hour day; lift five pound continuously, twenty pounds frequently, and twenty-

five pounds occasionally; and carry five pound continuously, ten pounds frequently, and twenty-five pounds occasionally.  He then added the elements of unlimited use of the arms, hands and legs; postural limitations of occasional bending, squatting, crawling, and climbing and frequent reaching;  moderate restriction from exposure to moving machinery; and mild restriction from exposure to driving automotive equipment; but no restriction involving unprotected heights and dust, fumes, gases, temperature and humidity. (Tr. 436).

The ALJ asked the VE whether such a person could perform plaintiff's past relevant work and the VE answered that the person could not.  The ALJ asked the VE if there were other jobs which the hypothetical person could perform and the VE identified the light, unskilled jobs of bench assembler, housekeeper, and non-postal mail clerk as a representative sample of light work. (Tr. 437-438).

On questioning from plaintiff's counsel, the VE stated that the hypothetical question did not indicate the need for a sit-stand option. (Tr. 438).  Plaintiff's counsel also questioned the amount of bending necessary and the VE answered that he had checked that postural requirement against the Dictionary of Occupational Titles and gave counsel the DOT code numbers for the three positions. (Tr. 438).  The VE also testified that if plaintiff's testimony was given full credit, she could not perform the work identified. (Tr. 439).

**VII.   <u>Analysis</u>**

**A.   <u>Standard of Review.</u>**

In reviewing claims brought under the Act, this court's role is a limited one.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's

findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991) (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1427 (1971); Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1158-1159 (11th Cir. 2004); Bloodsworth, 703 F. 2d at 1239.  The Commissioner's decision must be affirmed if it is supported by substantial evidence even when a court finds that the preponderance of the evidence is against the decision of the Commissioner. Richardson, 402 U.S. at 401, 91 S.Ct. at 1427 (1971); Crawford, 363 F. 3d at 1158-1159; Bloodsworth, 703 F.2d at 1239.   "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  Further, it has been held that the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  This court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

   **B.    Statement of the Law**

   An individual who applies for Social Security disability benefits or supplemental security income must prove their disability.  See 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

6

has lasted or can be expected to last for a continuous period of not less than twelve months."   42

U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).   The Social Security

regulations provide a five-step sequential evaluation process for determining if a claimant has

proven their disability.  See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  At the first step, the

claimant must prove that he or she has not engaged in substantial gainful activity.  At the second

step, the claimant must prove that he or she has a severe impairment or combination of

impairments. If, at the third step, the claimant proves that the impairment or combination of

impairments meets or equals a listed impairment, then the claimant is automatically found

disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the

third step, he or she must proceed to the fourth step where the claimant must prove inability to

perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In

evaluating whether the claimant has met this burden, the examiner must consider the following

four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining

physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.

Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth

step that the claimant is capable of engaging in another kind of substantial gainful employment

which exists in significant numbers in the national economy, given the claimant's residual

functional capacity and age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th

Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can

perform, the claimant must prove inability to perform those jobs in order to be found disabled.

Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); see also Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

C.   **Medical Evidence**

From July 1992 through February 2001, plaintiff was treated by James L. West, M.D., an orthopedic surgeon following a back injury at work.  An MRI obtained July 29, 1992, showed degenerative disc disease at the L3-4 level with "generalized disc bulge and associated mild spinal canal stenosis", at the L4-5 level with "left paracentral disc herniation", and mild spinal canal stenosis at the L5-S1. (Tr. 282-283).  A second MRI obtained January 20, 1993, showed some nerve encroachment and a "prominent lateral disc fragment component far beyond the neural foramen at L4-5 on the left." (Tr. 278).  Plaintiff received physical therapy in 1993 (Tr. 290-306) and epidural blocks ( January 27, 1993 (Tr. 203, 277), April 14, 1993 (Tr. 204-206),[1] March 4, 1998 and December 9, 1998 (Tr. 316-317), January 20, 1999 and April 13, 1999 (Tr. 518-520).  Also, non-steroidal anti-inflammatory medication and pain medication were prescribed and Dr. West's records indicate many calls for prescription refills. (Tr. 264-283, 308, 353-371, 521-527, 564-577).  An MRI of the lumbar spine obtained January 6, 1999, showed a central disc herniation at L4-5 which compromised the neural canal, a broad based bulge at L3-4, and hypertrophic changes at the L3-4 and L5-S1. (Tr. 319).

Following her initial lower back injury and rehabilitation, plaintiff was treated by Dr. West once in 1994, (Tr. 279, 281), once in 1995 (Tr. 268-270), once in 1996 (Tr. 268), twice in 1997 (Tr. 266, 268, 527, 575), five times in 1998 (Tr. 265-267, 288-289, 308, 366, 575), four

---

[1]  R. Lee Irwin, M.D., examined plaintiff and then administered an epidural injection. (Tr. 204-205).  On examination he found plaintiff had a positive straight leg raise test on the left leg but not the right.  He noted also that plaintiff showed some slight dampening of reflex and slight weakness on the left leg compared to the right.  He also noted that plaintiff seemed to "react out of proportion to the stimulus as regards complaints of pain" including the tourniquet and IV injection.  He thought it possibly secondary to anxiety but thought it "may indicate a very low pain threshold" and was "not a particularly good prognostic sign." (Tr. 205).

times in 1999 (Tr. 360, 522-523), once in 2000 (Tr. 572) and once in 2001 (Tr. 564, 575).

On March 27, 1997, plaintiff was consultatively evaluated by Eric G. Becker, O.D.  (Tr. 206-208).  Plaintiff reported chronic daily lower back pain which occasionally radiated into her legs that prevented her from lifting, bending or straining. (Tr. 206).  Dr. Becker noted plaintiff reported she was able to take care of her basic activities of daily living, drive and perform light housework. (Tr. 206).  On examination, he found plaintiff tested positive for lower back pain, had strength of 4/5 in the lower extremities, had a slow gait, and "somewhat shuffled", and her "anterior thoracolumbar flexion [was] from 0-45 degrees." (Tr. 207).  She reported she could not heel or toe walk or squat and rise because of pain. (Tr. 207).  He diagnosed chronic low back pain secondary to degenerative disc disease and spinal stenosis. (Tr. 208).

On July 22, 1997, plaintiff had out-patient hammer toe surgery on both feet. She was patient discharged in satisfactory condition with good prognosis. (Tr. 226-227)

On January 14, 1998, plaintiff was consultatively examined by Charles D. Terry, M.D. Dr. Terry noted plaintiff's report of chronic back pain and that she does light housekeeping and watches television. (Tr. 242-243).  On examination, he noted plaintiff moved on and off the examining table without difficulty but with complaints of low back pain. (Tr. 243).  Plaintiff's lumbar spine x-ray showed as follows:

> Five lumbar vertebrae bodies with normal height and alignment.  Mild disc narrowing at L5-S1 with remaining disc spaces maintained.  The lumbar pedicles appear to be relatively short on a congenital basis.  There is a suggestion of degenerative facet sclerosis at L4-5 and L5-S1.

(Tr. 246).  Dr. Terry completed a range of motion chart wherein he found plaintiff limited on forward bending to 40 degrees with a possible of 80 degrees and on backward bending to 10 degrees with a possible of 30 degrees. (Tr. 245).

On November 20, 1998, plaintiff was consultatively examined by Andre Fontana, M.D., an orthopedic physician. (Tr. 311-313).  Dr. Fontana noted plaintiff's report of back pain radiating into her left leg with tingling and heaviness.  Plaintiff reported taking Daypro and Talacen.  She also reported that she walked without assistance for short distances, cooked occasionally but did not clean or drive.  Plaintiff's x-ray showed degenerative disc disease with mild left-sided scoliosis. On examination, Dr. Fontana noted plaintiff's heel-toe gait was good, squatting was poor, deep tendon reflexes were 2+,  "[s]ensory decreased on the lateral left leg", and "[w]eakness possibly in extension of the left toes." (Tr. 312).  He found plaintiff limited to 20 degrees on forward and backward bending and 15 degrees on lateral bending, and limited on straight leg raising while seated and supine. (Tr. 312).  Dr. Fontana concluded that plaintiff could perform "light or sedentary type of activities". (Tr. 312).

On November 20, 1998, Dr. Fontana completed a physical capacities evaluation wherein he found plaintiff could sit for one hour at a time and for eight hours in an eight hour day, stand for one hour at a time and for six hours in an eight hour day, and walk for one hour at a time and for four hours in an eight hour day.  He also found plaintiff could continuously lift up to five pounds, frequently lift up to twenty pounds, occasionally lift up to twenty-five pounds but never more.  He also found plaintiff could continuously carry up to five  pounds, frequently carry up to ten pounds, occasionally carry up to twenty-five pounds but never more.  Dr. Fontana found plaintiff could use her hands for simple grasping, pushing-pulling arm controls and fine manipulation, and was unlimited in the use of her legs for repetitive actions.  He found plaintiff could occasionally bend, squat, crawl, and climb and frequently reach.  He found plaintiff was totally restricted from exposure to unprotected heights, moderately restricted from exposure to

moving machinery, and mildly restricted from exposure to driving automotive equipment.  He found she was not restricted from exposure to marked changes in temperature and humidity, and exposure to gas, fumes and dust. (Tr. 313).

On May 26, 2000, plaintiff was treated by Peter Coats, M.D., for tingling in her left forearm and hand with slight numbness in her index and long finger.  She was diagnosed with cervical radiculitis and medications were prescribed  (Tr. 534)   The MRI of her neck showed mild cervical degenerative disc disease at the C3 through C7, cervical stenosis at the C5-6 and C6-7, spondylitic changes at the C4-5 without significant impingement, spondylitic spurring to the left at the C5-6, and more prominent spondylitic changes at the C6-7 and C7-T1 "with oncovertebral articulation hypertrophy impinging the neural foramen on the left." (Tr. 536). Plaintiff's x-ray showed essentially the same findings and Dr. Coats interpreted it to show a "[p]rominent uncinate[2] spur extending into the interverterbral foramen at C6-7 on the left" which he though "could be symptomatic." (Tr. 533).

On June 14, 2000, plaintiff was initially examined by Troy H. Middleton III, a neurologist, on referral from Dr. Coats.  Dr. Middleton recommended "halter cervical traction" and continued anti-inflammatory medication. (Tr. 540-541).  Plaintiff returned on June 19, 2000, and reported her pain was slightly better.  Dr. Middleton noted that the x-rays showed "disc disease at 5-6 and 6-7 most pronounced at 6-7 laterally with ruptured disc and spur." (Tr. 539). Plaintiff was advised to continue traction and medication.  She returned on July 3, 2000, and Dr. Middleton noted "slight improvement with cervical traction". (Tr. 538).  He recommended

_____

[2] Uncinate means hooked at the tip. MERRIAM-WEBSTER ONLINE DICTIONARY. http://www.m-w.com

continued traction for the next week and that if "the level of functioning is unacceptable to her that surgery is an option." (Tr. 538).

On July 18, 2000, plaintiff was consultatively examined by Thomas R. Dempsey, M.D., an orthopedic physician.  Dr. Dempsey observed that plaintiff walked and moved very slowly and complained of pain on touching her back.  He found no muscle spasm or atrophy in the back and no weakness or muscle atrophy in the legs.  He also found plaintiff's reflexes and sensory were normal.  He noted plaintiff was limited on forward, backward and lateral bending of the spine, heel and toe walked unsteadily, "was reluctant to do a straight leg raise on either side and will not dorsiflex or plantar flex her ankle." (Tr. 542-543).  Dr. Dempsey concluded that "despite her impairment, in my opinion, she can do work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." (Tr. 543).  The record does not indicate that plaintiff reported neck and arm pain to Dr. Dempsey and does not indicate that he evaluated plaintiff's neck or reviewed the x-rays. (Tr. 542-543).

On May 21, 1998, and September 15, 2000, plaintiff had skin cancers removed by her dermatologist. (Tr. 553-557).

D.      **Plaintiff's Argument**

**1. Whether the Administrative Law Judge (ALJ) erred in finding the evidence demonstrated that plaintiff has severe impairments without specifying which impairments he found to be severe.**

Plaintiff argues that the ALJ did not specify which of plaintiff's impairments he found were severe impairments but instead stated only that "the evidence demonstrates that the claimant has severe impairments that impose significant limitations on the claimant's ability to

12

perform basic work activities" and that plaintiff met her burden at step two of the sequential

evaluation process.  In support, plaintiff refers to the decision in <u>Kyles v. Barnhart</u>, Civil Action

01-0898-P-M wherein the court held that it was reversible error for the ALJ not to specifically

identify which impairments were severe and which were non-severe.  Plaintiff states that the

court in <u>Kyle</u> reasoned that if the ALJ does not identify which impairments are severe, then the

court cannot determine whether the ALJ's decision is supported by substantial evidence.

> In the present case, the ALJ found as follows in the body of his decision:

> In this case, the evidence demonstrates that the claimant has severe impairments
> that impose, significant limitation on the claimant's ability to perform basic work
> activities.  In addition, the reports of treating and examining physicians are
> sufficient to find that the claimant has met her burden at step two with respect to
> those impairments.

(Doc. 406).   In his findings, he stated as follows:

> 2. The claimant has impairments that impose a significant limitation on
> her ability to perform some basic work activities.
> 3.  The claimant's impairments, when considered individually or in
> combination, do not meet or equal the conditions set forth in any Listing of
> Impairments in 20 CFR 404, Subpart P, Appendix 1.

(Doc. 413).   In his summary of the hypothetical question presented to the VE, the ALJ stated

that he used the element of a hypothetical individual with a "diagnoses of degenerative disc

disease with possible small herniated disc and with mild radiculopathy[.]" (Tr. 412).

> The medical records indicate that plaintiff has degenerative disc disease of the lumbar

and cervical spine, hammer toes corrected with surgery and skin cancers removed by her

dermatologist.  Plaintiff applied for benefits based on allegations of disabling back pain.

Plaintiff testified that she had back pain radiating into her legs and neck pain radiating into her

arms and fingers with numbness and tingling in her left arm.  She has not testified as to any

residual functional limitations resulting from the hammer toe surgery or skin cancer surgery. She testified that she was not being treated for any condition but for her back and neck. (Tr. 433). The ALJ summarized and discussed these medical records and plaintiff's testimony in making his residual functional capacity assessment and in posing a hypothetical question to the VE. (Tr. 409-412). However, in making the severity determination at step two of the sequential evaluation process, he did not specifically identify the impairments he found were severe, but instead, as plaintiff points out, he stated simply that plaintiff has severe impairments.

Plaintiff relies upon <u>Kyles v Barnhart</u>, Civil Action 01-0898-P-M as support for her argument. However, the case is factually distinguishable from the present case. In <u>Kyles</u>, plaintiff alleged disabling conditions of degenerative disc disease, sleep apnea, chronic pain, and bilateral arthritis in her knees. (<u>Id</u>. at Doc. 10). In <u>Kyles</u>, the court found that the ALJ did not set forth or discuss which of the four alleged impairments were severe and therefore, the court could not say that the ALJ's decision was supported by substantial evidence. (<u>Id</u>. at Doc. 17).

In the present case, plaintiff applied for disability based upon two specific impairments degenerative disc disease in the neck and lower back and status-post the herniated disc in her lower back. The ALJ summarized plaintiff's medical treatment records which consist almost exclusively of treatment for back and neck pain and limitations. (Tr. 406-409). He then analyzed these medical records as they relate to and support his determination of plaintiff's residual functional capacity for light exertional work. (Tr. 409-412).

As previously stated, plaintiff had out-patient surgery for hammer toes and surgery twice to remove skin cancers. However, she has not applied for disability based upon these surgeries nor has she alleged any functional limitation or disabling condition resulting from either of these

conditions.  Plaintiff testified that she received treatment for no condition other than her back and neck pain. (Tr. 433).

Given the present facts and evidence, the undersigned finds that the ALJ did not commit reversible error solely because he failed to specifically state which impairments he found were severe.  This error does not rise to a level which would necessitate remand of the ALJ's decision on this issue alone, but the error will be addressed later in this report and recommendation in conjunction with the issue of whether the ALJ presented a complete hypothetical question to the VE.[3]  Also, this finding should not be construed as an endorsement or acceptance of the ALJ's lack of specificity or to indicate that it would be acceptable in another circumstance.  The court acknowledges and reiterates that the ALJ has an affirmative duty at the second step of the sequential evaluation process to identify plaintiff's severe impairment.  However, the medical evidence as summarized herein combined with plaintiff's testimony constitutes substantial evidence in support of the ALJ's decision that plaintiff has severe impairments.[4]

---

[3] "Naturally every mistake by an ALJ does not so undermine a determination that it cannot be said to be supported by substantial evidence.  Because the law recognizes that, it accords some errors the status of being so as not to require the rejection of an ALJ's decision. Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits." Kolesar v. Shalala, 1994 WL 30544 (N.D.Ill.) citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.1990)); see also Mays v. Bowen, 837 F.2d 1362 (5th Cir.1988) citing Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517, 520 (5th Cir. Jan. 1981)(Policy behind harmless error is to preserve judgment and avoid waste of time.); see also Reeves v. Heckler, 734 F. 2d 519, 526 n.3 (11th Cir. 1984).

[4] The ALJ found that "[t]he record supports a finding that the claimant's musculoskeletal symptoms and conditions are capable of being treated with conservative measures, including epidural steroid injections and the proper and regular use of prescription medications." (Tr. 412). He also concluded that plaintiff's "alleged symptoms and conditions are not of a disabling degree and should not preclude the claimant's performance of light work activity." (Tr. 412).

**2. Whether the ALJ committed reversible error by failing to develop a full and fair record because the ALJ failed to resolve any controversy between the Vocational Expert's testimony and the <u>Dictionary of Occupational Titles.</u>**

Plaintiff argues that the transcript of the hearing indicates that the ALJ did not ask the VE whether his testimony was consistent with the job descriptions in the <u>Dictionary of Occupational Titles</u> (DOT). (Tr. 434-440).  Plaintiff argues that <u>Social Security Ruling 00-4p:Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704, places an affirmative duty on the ALJ to ask the VE whether the VE's testimony regarding the description of jobs conflicts with information in the DOT, and if so, to explain the conflict.  Plaintiff argues that because the ALJ did not question the VE regarding whether the jobs he identified conflicted with the DOT, the case should be remanded so that the ALJ can obtain this information from the VE.

In regard to resolving conflicts between occupational information provided by the VE and the DOT, Social Security Ruling 00-4p, sets forth, in part, as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

<u>Id</u>. at *2.  The Ruling calls for the ALJ to inquire as to whether the VE's testimony and the DOT

16

are consistent, and if not, to determine whether the VE's reasons for identifying an occupation in conflict with the DOT are reasonable and provide a basis for relying on the VE's testimony rather than the DOT.[5]

Basically, plaintiff argues that the ALJ breached his obligation to fully and fairly develop the record by failing to ascertain and resolve any conflicts between the VE and the DOT. Failing to do so may undermine the Commissioner's proof that there was other work which plaintiff could perform that exists in significant numbers in the national economy at step five of the sequential evaluation process.

Because the hearing before an ALJ is not an adversary proceeding, the ALJ has a "basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997) citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). However, plaintiff must show prejudice to her case before the court will find her "right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham,129 F.3d at1422-1423 (citations omitted). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id. at 1423 (citation omitted). Instead of explaining how she was prejudiced by the ALJ's failure to follow the ruling, i.e., failing to identify a conflict between the VE's testimony and the jobs he identified by number in the DOT, plaintiff simply asserts that it is reversible error to not ask the question. Plaintiff has presented no evidence that "an apparent unresolved conflict" between the VE's testimony and the DOT exists in her case. Accordingly, the undersigned finds that plaintiff

---

[5] The Social Security Administration is charged with taking administrative notice of reliable job information available from the DOT and various governmental and other publications. See 20 C.F.R. § 416.966(d)(1).

has not shown prejudice resulting to her because the ALJ failed to follow the requirements of Ruling 00-4p and thus, the ALJ did not commit reversible error. See also Brown v. Shalala, 44 F. 3d 931, 934 (11th Cir. 1995) (Plaintiff must show that he is prejudiced before it is found that his due process rights have been violated to the extent that the case should be remanded for further development); see also Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir.1985) (There was no showing of unfairness or prejudice where claimant did not allege that the record as a whole was incomplete or inadequate and the ALJ's decision was thorough.);  Holland v. Heckler, 764 F.2d 1560, 1562 (11th Cir. 1985) (Moreover, when arguing a due process violation it "is not enough to say that had [the ALJ] seen more information his decision would have been different.")

Moreover, while the transcript shows that neither the ALJ nor plaintiff's counsel asked the VE if his response conflicted with the DOT, it does indicate that the VE consulted the DOT. At the hearing, the VE testified as follows:

Counsel:    In your opinion as a vocational expert would [the PCE prepared by Dr. Fontana] be indicative of the need for a sit, stand option position for an individual with that restriction?

VE:    No, sir.  I don't believe it would indicate a sit, stand option for light work. I don't believe that it would.

Counsel:    So the jobs identified, the bench assembler, the housekeeper and the mailbox non-postal, all of these positions would allow this person to sit - - to stand or sit or walk for an hour at a time?

VE:    Yes, sir.  Would require no more than an hour of standing or an hour of walking at one particular time.

| | |
|---|---|
| Counsel: | What about the limitation of occasional bending? |
| VE: | All these jobs require no more than occasional bending and stooping including the housekeeper.  I just checked it. |
| Counsel: | Do you have DOT codes for those representative positions, Mr. Murphy? |
| VE: | Yes, sir.  Sure do. |
| Counsel: | Thank you. |
| VE: | The bench assembler is 706.684-022.  The  - - - let's see, the housekeeper is 323.687-014, and the mail clerk is 209.687-026. |

(Tr. 438-439).   The opportunity to question the VE regarding conflicts was available to the ALJ.

However, it appears that the VE was independently checking for conflicts between the

hypothetical question and the DOT.

Thus, while conflicts may not have been specifically identified and resolved, the DOT

was an integral part of the formation of the VE's response and the VE appeared to have engaged

in a conflicts check on his own.  Accordingly, the undersigned finds that the ALJ did not commit

reversible error.

**3.  Whether the ALJ presented a complete hypothetical question to the Vocational**

**Expert.**

At oral argument, the parties were asked to provide additional briefing on the issue of

whether the ALJ presented a complete hypothetical question to the VE.  In her supplemental

brief, defendant argues that the hypothetical question adequately presented all of plaintiff's

residual functional limitations because her symptoms of cervical disc disease had improved and

her doctors indicated no work related limitation of function or restriction.  Defendant also argues

that the Commissioner's decision would not change even should the ALJ have specifically stated that plaintiff's cervical disc disease was a severe impairment, thus the ALJ committed harmless error.  Plaintiff responds that the requirements of Pendley v Heckler, 767 F. 2d 1561 (11th Cir. 1985) were not met because the hypothetical question did not contain the functional limitations resulting from all of plaintiff's severe impairments including her cervical spine problems.

If the ALJ relies upon a VE's response to a hypothetical question as substantial evidence to support a determination that plaintiff can perform other work which exists in significant number in the national economy, then the elements of the hypothetical question must describe all of plaintiff's impairments. Jones v Apfel,190 F.3d 1224, 1228 (11th Cir. 1999); McSwain v. Bowen, 814 F. 2d 617, 619-620 (11th Cir. 1986); Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) (finding that "we cannot assume that the vocational expert would have answered in a similar manner had the ALJ instructed him to consider all of the appellant's severe impairments.").

As previously stated, the ALJ posed a hypothetical question wherein the VE was asked to assume a "diagnosis of degenerative disc disease with possible small herniated discs with mild radiculopathy." (Tr. 436).  The ALJ then added exertional, postural and environmental elements based upon the physical capacities evaluation prepared on November 20, 1998. (Tr. 311-313).  However, this evaluation did not include any assessment of plaintiff's degenerative disc disease of the cervical spine because she was not diagnosed until June 14, 2000. (Tr. 538-539)  Even though the scope of the assumed diagnosis is arguably broad enough to include cervical disc disease in addition to lumbar disc disease as plaintiff's severe impairments, there are no findings by any physician as to whether plaintiff had functional limitations or restrictions of the use of her

20

arms resulting from the cervical disc disease such that could be included as elements in the hypothetical question.  The November 20, 1998, physical capacities evaluation reflected only the diagnosis of plaintiff's lumbar disc disease.

Defendant argues that the absence of report of restrictions resulting from the cervical disc disease in the records of plaintiff's treating and consultative physicians negates the need to remand this case for a complete hypothetical question.  In other word, the defendant argues that there are no restrictions to include in the hypothetical on remand, thus remand is not necessary. However, it is clear that the ALJ relied primarily, if not solely, on Dr. Fontana's November 1998 physical capacities evaluation of plaintiff's functional capacity and that Dr. Fontana's evaluation was the basis for the hypothetical question.  As stated previously, Dr. Fontana's evaluation was made prior to plaintiff's diagnosis of cervical disc disease.  Thus, there is no indication that any consideration was given to possible restrictions as a result of plaintiff's cervical disc disease.  Accordingly, the undersigned recommends that this case be reversed and remanded for specific identification of the plaintiff's severe impairments, determination of her residual functional capacity, and presentation of a complete hypothetical question to a VE.

**VIII.   Conclusion**

Upon consideration of the administrative record, the memoranda of the parties, oral argument, and for the reasons set forth, it is recommended that this action be **reversed and remanded** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings not inconsistent with this report and recommendation. Melkonyan v. Sullivan, 501 U.S. 89, 111 S.Ct. 2157 (1991).  Remand pursuant to sentence four of § 405(g)

makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. §

2412, <u>Shalala v. Schaefer</u>, 509 U.S. 292, 113 S.Ct. 2625 (1993), and terminates this court's

jurisdiction over this matter except the court may consider issues related to fees and costs due

and owing to the plaintiff because plaintiff is a prevailing party under the EAJA, and in the

future such fees and costs which plaintiff's counsel may be entitled to recover pursuant to the

Social Security Act if plaintiff is awarded benefits.

      The attached sheet contains important information regarding objections to this <u>report and</u>

<u>recommendation.</u>

      **DONE** this 8th day of December, 2005.


            **<u>s / Kristi K. DuBose</u>**
            **KRISTI K. DuBOSE**
            **UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


 s / Kristi K. DuBose
**UNITED STATES MAGISTRATE JUDGE**